1  GRAHAM BERNSTEIN
   3525 Del Mar Heights Road, #253
2  San Diego, CA 92130
   Phone: (858) 627-0064
3  Facsimile: (858) 627-0065

4  Plaintiff, In Pro Per

FILED

2012 AUG 23  PM 3: 32

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

5

6

7

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 GRAHAM BERNSTEIN, an individual,)   Case No.: 3:12cv0717 AJB (JMA)

12            Plaintiff,            )   JURY TRIAL DEMANDED

13     vs.                         )   **FIRST AMENDED COMPLAINT
                                    )   FOR MONEY DAMAGES
14                                  )   PURSUANT TO 29 U.S.C. §§ 1002 et.
15 HEALTH NET LIFE INSURANCE       )   seq., 1109 et. seq., and 1132 et seq.
   COMPANY and DOES 1-10 Inclusive,)   (Employee Retirement Income
16                                  )   Security Act of 1974, as amended)**
17            Defendants.          )
                                    )   1. Wrongful Denial Of Benefits
18                                  )      (ERISA)
                                    )   2. Breach of Fiduciary Duty (ERISA)
19                                  )   3. Negligent Misrepresentation (state
                                    )      action)
20                                  )   4. Promissory Estoppel (state action)
                                    )
21

22

23

24

25

26

27

28

                                    - 1-        Case No.: 3:12cv0717 AJB (JMA)
           FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
        TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

Plaintiff GRAHAM BERNSTEIN, alleges as follows:

## COMPLAINT

1.     This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1002 et. seq., § 1109 et seq., 29 U.S.C. § 1132(a)(1)(B) ("ERISA) to recover benefits due under an employee disability benefits plan, to clarify the terms of the plan, and to recover costs and attorneys fees as provided by ERISA, and actions under California state law for negligent misrepresentation and promissory estoppel.  Plaintiff seeks a judgment that medical benefits provided to Plaintiff were and are properly covered or insured by Defendant HEALTH NET LIFE INSURANCE COMPANY ("Health Net") herein; that Defendant Health Net also administered the insurance plan; that Defendant Health Net wrongfully withheld payments due to Plaintiff under the health insurance policy; that Health Net negligently represented coverage; that Health Net breached its fiduciary duties to Plaintiff; that Health Net is equitably estopped to deny coverage, and therefore that Health Net is liable for damages for such sums as Health Net should have paid, together with interest, costs, and reasonable attorneys fees, and for Plaintiff's actual damages.

## THE PARTIES

2.     Plaintiff is an individual who, at the time of the activities complained of, was living in Del Mar, California.  Plaintiff was insured and covered through a policy or policies of health insurance issued through Defendant (the "Plan").  The Plan was subject to ERISA.

3.     The Plan was subject to ERISA.  Plaintiff was and is a participant in an employer-sponsored health benefit plan.[1]  The Plan was and is subject to ERISA and was in full force and effect at all time relevant herein.

---

[1]   A true and correct copy of the Flexaust Health Benefits Summary Plan Description is attached hereto as Exhibit "A." (the "Plan").

-2-

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1      4.     Defendant Health Net was and is the claims administrator under the

2  Plan and knowingly participated in the violations alleged herein.

3      5.     Defendant Health Net was and is an ERISA fiduciary or plan

4  administrator (Plan p. 5, 81), providing benefits for Plaintiff in the State of

5  California and otherwise doing business in this federal district.

6      6.     Defendant Health Net breached its fiduciary duty to Plaintiff and

7  refused to authorize or pay benefits to which Plaintiff is entitled under the Plan.

8  Defendant Health Net knowingly and willingly participated in the violations

9  alleged herein.

10     7.     Each Defendant Doe 1 through Doe 10 was and is an ERISA fiduciary

11  or plan administrator providing benefits for Plaintiff in the State of California and

12  otherwise doing business in this federal district.  The names and capacities of

13  Defendants Doe 1 through Doe 10 are unknown to Plaintiff.  Plaintiff will amend

14  this pleading to allege the true names and capacities of these Doe Defendants when

15  available.

16             **JURISDICTION AND VENUE**

17     8.     This court has jurisdiction of the ERISA claim pursuant to 29 U.S.C.

18  § 1002 et. seq.  This court has pendent jurisdiction over the state law claims

19  pursuant to 28 U.S.C. § 1367.

20     9.     Venue is proper in the Southern District of California pursuant to 29

21  U.S.C. § 1132(e)(2).  Upon information and belief, the Plan is administered in this

22  district.  Further, the acts of Defendants complained of occurred within this judicial

23  district.

24                    **FACTS**

25     10.     As described above, Plaintiff was insured and covered under the

26  "Plan" issued through Defendant.  The Plan was and is subject to ERISA.

27     11.     Upon information and belief, at all times relevant, defendant Health

28  Net administered the Plan.

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

12.     Plaintiff sought medical advice and assistance from Dr. Michael Khalil.  Based on Plaintiff's medical condition and presenting symptoms, Dr. Khalil recommended that Plaintiff undergo a surgical procedure (the "Procedure") at Ambulatory Care Surgery Center ("ACSC") in San Diego, California.

13.     Plaintiff understood, based on the terms of the Plan, that the Procedure would be covered.  The Plan was vague as to the dollar amount of the coverage for the Procedure provided by the Plan.  The Plan did not include a rate sheet, fee schedule, cost cap per procedure or specified contract rate for the procedure.

14.     The Plan instructs insureds, like Plaintiff, who have questions regarding coverage for out of network services to call customer service for guidance regarding coverage issues.  Specifically, the Plan instructs as follows:

> " **For more information on the determination of Maximum Allowable Amount, or for information, services and tools to help You further understand Your potential financial responsibilities for Covered Out-of- Network Services and Supplies please log on to www.healthnet.com or contact HNL Customer Service at the number on Your Health Net PPO identification card.**" (bold in original)(Plan p. 93.)

15.     Upon information and belief, ACSC is an outpatient surgical center. The Plan defines outpatient surgical centers as " a facility other than a medical or dental office, whose main function is performing surgical procedures on an outpatient basis.  It must be licensed as an outpatient clinic according to state and local laws and must meet all requirements of an outpatient clinic providing surgical services." (Plan p. 96.)  ACSC meets the definition of outpatient surgical center provided in the Plan.

16.     In addition, Plaintiff and ACSC complied with the terms of the Plan and confirmed the availability and applicability of proper medical insurance coverage for the Procedure with Defendant via a telephone call to (800) 641-7761 on October 4, 2011, with Kelly at the offices of Defendant.

17.     Defendant advised Plaintiff, through ACSC, that the Procedure would

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1  be covered at 50% of the reasonable and customary charges by the clinic utilized

2  for the Procedure as an out-of-network provider, subject to a $6,000.00 deductible

3  charge and a $12,000.00 stop loss.  Plaintiff has satisfied his deductible and stop

4  loss payments.  Based on the terms of the Plan, Defendant is obligated to pay

5  100% of the denied payment amount.

6      18.    Page 12 of the Plan requires Defendant to pay 50% of the outpatient

7  surgical center charges when outpatient surgeries are performed by out of network

8  providers.  Defendant refused to pay the required amounts specified in the plan and

9  confirmed by Defendant's customer service representative.

10     19.    Under the "Plan Benefits" portion of the Plan, "[t]he services and

11 supplies described below will be covered for the Medically Necessary treatment of

12 a covered illness, injury or condition." (Plan p. 33.)  For out of network providers,

13 " [t]he maximum amount [Defendant] will pay for Covered Expenses when

14 services or supplies are received from an Out- of-Network Provider is the lesser of

15 the billed charge or the Schedule Amount as defined in the 'Definitions' section."

16 (Plan p. 33.)  Defendant attempts to obscure its payment obligations by referring

17 even the most discerning patients to multiple different portions of the Plan with

18 vague and seemingly conflicting terms.  Here, the "Definitions" section of the plan

19 provides that the " [m]aximum Allowable Amount for Physician services is

20 determined by applying a designated percentile from the database of Physician

21 charges from the Fair Health MDR Payment System (MDR) or a similar type of

22 database of Physician charges." (Plan p. 93.)

23     20.    Plaintiff believes and on that bases alleges that the database did not

24 contain charges for the procedures performed on Plaintiff.  Under these

25 circumstances, based on the Plan, if "the applicable service or database does not

26 include an amount for the service or supply provided, Maximum Allowable

27 Amount shall be deemed to be 75% of the amount normally charged by the

28 provider for the same services or supplies." (Plan p. 93.)  Defendant failed to pay

- 5 -                                        Case No.: 3:12cv0717 AJB (JMA)

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1   this amount for the covered medical services received by Plaintiff.  In fact,

2   Defendant did not even pay 50% of the charges.

3        21.    At the time that Dr. Khalil performed the Procedure, Plaintiff's

4   insurance was current and in effect, and had been in effect since August 1, 2010.

5   In reliance on these representations, ACSC agreed to provide the Procedure.

6        22.    Dr. Khalil performed the Procedure on Plaintiff on October 7, 2011, at

7   ACSC's facility.

8        23.    Plaintiff would not have undergone the Procedure but for the express

9   language of the Plan and coverage confirmation by Defendant's customer service

10  representative per the instructions set forth in the Plan.

11       24.    Upon information and belief, ACSC would not have performed the

12  Procedure but for the coverage by the Plan and the representations by Defendant.

13       25.    Upon information and belief, the Procedure and the related services

14  are covered by the Plan or are required to be covered by the Plan under ERISA.

15       26.    Upon information and belief, ACSC sent invoices to Defendant for

16  the Procedure (and related services) in the total sum of $16,842.28.  True and

17  correct copies of the invoices is attached as Exhibit A and incorporated by

18  reference.

19       27.    On about November 15, 2011, Defendant paid only $4,210.57 of the

20  total sum.  Defendant declined to pay $8,421.14 (disallowed charges).  (A true and

21  correct copy of the Explanation of Benefits is attached as Exhibit B and

22  incorporated by reference.)

23       28.    Plaintiff and ACSC have asked Defendant to pay the remaining

24  balance, but Defendant has refused.  Plaintiff filed an appeal with Defendant and

25  Defendant rejected the appeal.  (A true and correct copy of the letter dated

26  November 23, 2011 denying Plaintiff's appeal is attached as Exhibit C and

27  incorporated by reference.)

28       29.    Plaintiff reasonably relied upon the written and verbal representations

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1    of Defendant in making the decision to proceed with the Procedure.

2        30.    Plaintiff would not have allowed the Procedure to take place without

3    assurance from Defendant that the Plan would cover the costs quoted.

4        31.    The representations by Defendant to Plaintiff and ACSC were false.

5    Plaintiff and ACSC were unaware of the falsity of Defendant's representations.

6    Plaintiff and ACSC reasonably relied on Defendant's representations and that

7    reasonable reliance caused damage to Plaintiff.

8        32.    Upon information and belief, Defendant either misrepresented the

9    nature of the available medical insurance coverage in providing the confirmation of

10   coverage, or wrongfully failed and refused to honor their legal commitment to

11   Plaintiff and ACSC based on the express terms of the Plan.

12       33.    Upon information and belief, each Defendant has engaged in a pattern

13   of refusal to pay proper benefits in situations similar to that of Plaintiff.

14       34.    Plaintiff has been damaged by Defendant's failure to pay the balance

15   of the amounts due for the Procedure and related services.

16       35.    Plaintiff has exhausted all available remedies under the Plan.

17                          **FIRST CAUSE OF ACTION**

18        **WRONGFUL DENIAL OF BENEFITS (ERISA § 502(A)(1)(B))**

19       36.    Plaintiff reasserts the allegations of paragraphs 1-35 of this

20   Complaint.

21       37.    Based on the facts alleged in this Complaint, Defendant has

22   wrongfully denied Plaintiff benefits, and Plaintiff asserts a cause of action against

23   each Defendant, pursuant to ERISA § 502(a)(1)(b)) (29 USC 1132(a)(1)(b)), to

24   recover benefits due to Plaintiff under the terms of the Plan and to enforce

25   Plaintiff's rights under the terms of the Plan.

26       38.    Plaintiff has suffered significant damages as a result of the above,

27   including loss of benefits, medical bills and costs and attorney's fees and costs.

28

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY (ERISA 29 § U.S.C. 1109)

39.   Plaintiff reasserts the allegations of the preceding paragraphs of this pleading.

40.   Defendant Health Net owed Plaintiff a fiduciary duty.  Defendant breached its duty to Plaintiff by engaging in the actions or inactions alleged herein. As a result of the breach, Plaintiff has suffered harm that Plaintiff would not have suffered absent the breach of fiduciary duties by Defendant.

41.   Defendant had a duty to insure Plaintiff and to cover medical expenses for certain medical procedures based on the express terms of the Plan. Defendant Health Net led Plaintiff to believe that Plaintiff would be protected from medical bills and financial liability for the medical Procedures obtained by Plaintiff based upon the express terms of the Plan and based on the oral representations of Defendant's agent.

42.   Despite the express terms of the Plan and the oral representations of Defendant's agent, Defendant Health Net failed to authorize or to pay for the Procedure after it was performed on Plaintiff.  Defendant Health Net was and is obligated to act in the best interest of Plaintiff based on the terms of the Plan and it failed to uphold its fiduciary responsibilities.  As a result of Defendant's breach of its fiduciary duties to Plaintiff, Plaintiff has suffered and continues to suffer financial harm, stress, mental anguish and other injuries.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

43.   Plaintiff reasserts the allegations of the preceding paragraphs of this pleading.

44.   Defendant represented to Plaintiff and ACSC that the following were true: that Plaintiff's health insurance under the Plan was in effect and that the Procedure and related services were covered under the Plan and that the Plan

-8-

Case No.: 3:12cv0717 AJB (JMA)

1   would pay the costs of the Procedure and related services as described in this
2   Complaint.

3          45.    Either Defendant's representations were true, and Defendants are
4   liable under the Plan, or, alternatively, Defendant's representations were not true.

5          46.    If the representations were not true, then each Defendant had no
6   reasonable grounds for believing the representation was true when the Defendant
7   made the representation.

8          47.    Each Defendant intended that Plaintiff rely on the representations.

9          48.    Plaintiff reasonably relied on each Defendant's representations and
10  went forward with the Procedure.

11         49.    Plaintiff was harmed by Plaintiff's reliance on each Defendant's
12  representations.

13         50.    Plaintiff's reliance on each Defendant's representations was a
14  substantial factor in causing Plaintiff harm.

15         51.    Plaintiff should be awarded Plaintiff's damages caused by
16  Defendant's negligent misrepresentations.

17                        **FOURTH CAUSE OF ACTION**
18                        **PROMISSORY ESTOPPEL**

19         52.    Plaintiff reasserts the allegations of the preceding paragraphs of this
20  pleading.

21         53.    Each Defendant made a clear and unambiguous promise that
22  Plaintiff's health insurance under the Plan was in effect and that the Procedure and
23  related services were covered under the Plan and that the Plan would pay the costs
24  of the Procedure and related services as described in this Complaint.

25         54.    Plaintiff relied upon the representation of each Defendant.

26         55.    Plaintiff's reliance upon each Defendant's representations was both
27  reasonable and foreseeable.

28         56.    Plaintiff was injured by Plaintiff's reliance on each Defendant's

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1    promises.  Plaintiff has been damaged by Defendant's failure to pay the balance of

2    the amounts due for the Procedure and related services.

3           57.    Therefore, each Defendant should be precluded under the theory of

4    promissory estoppel from denying Plaintiff's claim and denying coverage.

5           58.    To avoid injustice, Plaintiff should be awarded as damages against

6    each Defendant all amounts that would have been paid if the Plan covered the

7    Procedure and all related services, as well as Plaintiff's costs and attorneys fees

8    and expenses required to obtain relief.

9                              **ATTORNEY'S FEES**

10          59.    Plaintiff seeks an award against each Defendant for Plaintiff's actual

11   attorneys fees incurred herein pursuant to 29 U.S.C. 1132(g)(1).

12                             **PRAYER FOR RELIEF**

13        Plaintiff requests judgment against Defendants as follows:

14   1.     Judgment for the full amount due for the Procedure and the related

15          services, namely $8,421.14.

16   2.     Judgment for Plaintiff's attorneys' fees, expenses and costs that

17          Plaintiff has incurred for enforcing his ERISA rights;

18   3.     Pre-judgment and post-judgment interest;

19   4.     Such other relief as the court may deem just and proper.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28                      [SIGNATURE ON FOLLOWING PAGE]

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT
TO 29 U.S.C. §§ 1002 ET. SEQ., 1109 ET. SEQ., AND 1132 ET SEQ.

1

Dated:   Aug 23, 2012          **GRAHAM BERNSTEIN**, pro per

3                              By: _Graham Bernstein_

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES
PURSUANT TO 29 U.S.C. 1002 ET. SEQ. 1104 Et. seq., + 1132 et seq.

# ATTACHMENT A



# CERTIFICATE
# OF INSURANCE

*A complete explanation of Your plan*

*PPO (Plan 1AY) 349108*

**Important benefit information – please read**



# Health Net®
LIFE INSURANCE COMPANY

C20601(CA 1/11)

## Authorized Hospital and Skilled Nursing Facility Services

| | Preferred Providers | Out-of-Network |
|---|---|---|
| Unlimited days of care in a semi-private room or Special Care Unit including ancillary (additional) services | $0 | 50% |
| *Maximum amount allowable by HNL per day* | *No Maximum* | *$600* |
| Confinement for Infertility services | $0 | 50% |
| *Maximum amount allowable by HNL per day* | *No Maximum* | *$600* |
| *Lifetime benefit maximum for Infertility services** | *$2000* | *$2000* |
| Confinement in a Skilled Nursing Facility | $0 | 50% |
| *Maximum amount allowable by HNL per day* | *No Maximum* | *$250* |
| Outpatient surgery (Hospital or Outpatient Surgical Center charges only) | $0 | 50% |
| Outpatient services (other than surgery) | $0 | 50% |
| Routine nursery care for newborns | $0 | 50% |

**Notes:**

- Other professional services performed in the outpatient department of a Hospital, Outpatient Surgical Center or other licensed outpatient facility such as a visit to a Physician (office visit), laboratory and x-ray services, physical therapy, etc., may require a Copayment or Coinsurance when these services are performed. Look under the headings for the various services such as office visits, neuromuscular rehabilitation and other services to determine any additional Copayments or Coinsurances that may apply.

- Screening colonoscopy and sigmoidoscopy procedures (for the purposes of colorectal cancer screening) will be covered under the preventive care services for adults benefit as stated in the "Office Visits" section below. If, during the course of a screening colonoscopy or sigmoidoscopy procedure, a therapeutic (surgical) procedure is performed, then the Copayment or Coinsurance applicable for outpatient surgery will be required for the surgical procedure(s) performed. Diagnostic endoscopic procedures (except screening colonoscopy and sigmoidoscopy), performed in an outpatient facility require the Copayment or Coinsurance applicable for outpatient facility services.

- The Preferred Provider Coinsurance will apply if the Covered Person is admitted to a Hospital directly from an emergency room or urgent care center. The Covered Person will remain responsible for amounts billed in excess of Covered Expenses (the Schedule Amount) for the inpatient stay by an Out-of-Network Provider. You will not be reimbursed for any amounts in excess of the Schedule Amount billed by an Out-of-Network Provider.

- The above Coinsurance for inpatient Hospital or Special Care Unit services is applicable for each admission for the hospitalization of an adult, pediatric or newborn patient.

- The maximum amount allowable for outpatient Hospital services and surgery, provided by an Out-of-Network Provider, is limited to 50% of billed charges.

* All calculations of the lifetime benefit maximum for Infertility services for each Covered Person are based on the total aggregate amount of benefits paid under this plan and all other Health Net or HNL plans sponsored by the same employer.

# PLAN BENEFITS

The services and supplies described below will be covered for the Medically Necessary treatment of a covered illness, injury or condition. These benefits are subject to all provisions of this *Certificate*.

In addition, many of the Covered Services and Supplies listed herein are subject to Certification in many instances, prior to the expenses being incurred. If Certification is not obtained, the available benefits will be reduced. Please refer to the "Certification Requirement" subsection for further details.

An expense is incurred on the date You receive the service or supply for which the charge is made. HNL shall not pay for expenses incurred for any services or supplies in excess of any visit or benefit maximum described in the "Schedule of Benefits" section or elsewhere in this *Certificate*, nor for any service or supply excluded herein.

Services by certain providers may be covered only when a medical doctor (M.D.) or doctor of osteopathy (D.O.) refers You to them. Please refer to the definition of "Physician" in the "Definitions" section for more information.

The fact that a Physician or other provider may perform, prescribe, order, recommend or approve a service, supply or hospitalization does not, in itself, make it Medically Necessary, or make it a covered service.

## How Covered Expenses Are Determined

HNL will pay for Covered Expenses You incur under this plan. Covered Expenses are based on the maximum charge HNL will accept from each type of provider, not necessarily the amount a Physician or other health care provider bills for the service or supply. Other limitations on Covered Expenses may apply. See "Schedule of Benefits," "Plan Benefits" and "General Limitations and Exclusions" sections for specific benefit limitations, maximums, pre-Certification requirements and payment policies that limit the amount HNL pays for certain Covered Services and Supplies.

### Preferred Providers
The maximum amount of Covered Expenses for a service or supply provided by a Preferred Provider is the lesser of the billed charge or the amount contracted in advance by HNL, referred to in this *Certificate* as the Contracted Rate.

Since the Preferred Provider has agreed to accept the Contracted Rate as payment in full, You will not be responsible for any amount billed in excess of the Contracted Rate. However, You are responsible for any applicable Deductible(s), Copayments or Coinsurance payment required. You are always responsible for services or supplies not covered by this plan.

### Out-of-Network Provider
The maximum amount HNL will pay for Covered Expenses when services or supplies are received from an Out-of-Network Provider is the lesser of the billed charge or the Schedule Amount as defined in the "Definitions" section. (See the "HNL's Limited Fee Schedule for Out-of-Network Providers" subsection for a further representation and a representative sample of this schedule.)

Since the Out-of-Network Provider has **not** agreed to accept the Schedule Amount as payment in full, the amount billed by the Out-of-Network Provider may exceed the Schedule Amount. You will need to pay that excess amount, in addition to any applicable Deductible(s), Copayments or Coinsurance payment required. You are always responsible for services or supplies not covered by this plan.

**Important Note**: Even if a Hospital is a Preferred Provider, You should not assume that all Physicians and other individual providers of health care at the Hospital are Preferred Providers. If You are admitted to a Hospital You should request that all services be performed by Preferred Providers whenever You enter a Hospital.

## Deductibles

- After HNL determines the amount of Covered Expenses, HNL will subtract the applicable Deductible(s) and either the Copayment or the Coinsurance that applies to the covered service or supply. HNL will then pay up to the benefit limit shown in the "Schedule of Benefits" section.

- Only Covered Expenses will be applied to the satisfaction of the Deductible(s) shown in this *Certificate*.

- Maximum Allowable Amount for Physician services is determined by applying a designated percentile from the database of Physician charges from the Fair Health MDR Payment System (MDR) or a similar type of database of Physician charges.

- For Hospital services, Maximum Allowable Amount is calculated using a method developed by Viant, Inc., a data service that applies a Hospital profit margin factor for Hospitals, to the estimated costs of the services rendered by the Out-of-Network Hospital or a similar type of Hospital data service.

- For other types of services, Maximum Allowable Amount is determined by applying a designated percentile from the database of applicable professional or ancillary provider charges from the MDR or a similar type of database of applicable professional or ancillary provider charges. Payments to providers other than Physicians may be reduced based upon their licensed scope of practice.

- In the event the applicable service or database does not include an amount for the service or supply provided, Maximum Allowable Amount shall be deemed to be 75% of the amount normally charged by the provider for the same services or supplies. The Maximum Allowable Amount determined under the databases described above may be more or less than 75% of the amount normally charged by the provider for the same services or supplies.

- The Maximum Allowable Amount may also be subject to other limitations on Covered Expenses. See "Schedule of Benefits," "Plan Benefits" and "General Limitations and Exclusions" sections for specific benefit limitations, maximums, pre-Certification requirements and payment policies that limit the amount HNL pays for certain Covered Services and Supplies. HNL uses available guidelines of Medicare and its contractors, other governmental regulatory bodies and nationally recognized medical societies and organizations to assist in its determination as to which services and procedures are eligible for reimbursement.

From time to time, HNL also contracts with vendors that have contracted fee arrangements with providers ("Third Party Networks"). In the event HNL contracts with a Third Party Network that has a contract with the Out-of-Network Provider, HNL may, at its option, use the rate agreed to by the Third Party Network as the Maximum Allowable Amount, in which case You will not be responsible for the difference between the Maximum Allowable Amount and the billed charges. You will be responsible for any applicable Deductible, Copayment and/or Coinsurance at the Out-of-Network level.

In addition, HNL may, at its option, refer a claim for Out-of-Network Services to a fee negotiation service to negotiate the Maximum Allowable Amount for the service or supply provided directly with the Out-of-Network Provider. In that situation, if the Out-of-Network Provider agrees to a negotiated Maximum Allowable Amount, You will not be responsible for the difference between the Maximum Allowable Amount and the billed charges. You will be responsible for any applicable Deductible, Copayment and/or Coinsurance at the Out-of-Network level.

**In the event that the billed charges for the Out-of-Network Provider are more than the Maximum Allowable Amount, You are responsible for any amounts charged in excess of the Maximum Allowable Amount, except where the Out-of-Network Provider's fee is determined by reference to a Third Party Network agreement or the Out-of-Network Provider agrees to a negotiated Maximum Allowable Amount.**

**Please note that whenever You obtain Covered Services and Supplies from an Out-of-Network Provider, You are responsible for applicable Deductibles, Copayments and Coinsurance.**

**For more information on the determination of Maximum Allowable Amount, or for information, services and tools to help You further understand Your potential financial responsibilities for Covered Out-of-Network Services and Supplies please log on to www.healthnet.com or contact HNL Customer Service at the number on Your Health Net PPO identification card.**

**Maximum Allowable Cost** for any Prescription Drug is the maximum charge HNL will allow for Generic Drugs or for Brand Name Drugs which have a generic equivalent. A list of Maximum Allowable Costs is maintained, and may be revised periodically, by HNL.

**Medical Child Support Order** is a court judgment or order that, according to state or federal law, requires group health plans that are affected by that law to provide coverage to a child or children who is the subject of such an order. HNL will honor such orders.

**Preferred Providers** are Physicians, Hospitals or other providers of health care who have a written agreement with HNL to participate in the Preferred Provider Organization (PPO) network and have agreed to provide You with Covered Services and Supplies at a contracted rate (the Contracted Rate), except as noted under the definitions for "Bariatric Surgery Performance Center" and "Transplant Performance Center." You must pay any Deductible(s), Copayment or Coinsurance required, but are not responsible for any amount charged in excess of the Contracted Rate. Preferred Providers are listed in the Preferred Provider Directory given to You upon enrollment and periodically updated. To insure the participation by a Preferred Provider, please contact the Member Services Department at the telephone number on Your HNL ID Card before services are received.

**Prescription Drug** is a drug or medicine that can be obtained only by a Prescription Drug Order. All Prescription Drugs are required to be labeled "Caution, Federal Law Prohibits Dispensing Without a Prescription." An exception is insulin and other diabetic supplies, which are considered to be covered Prescription Drugs.

**Prescription Drug Covered Expenses** are the maximum charges HNL will allow for each Prescription Drug Order. The amount of Prescription Drug Covered Expenses varies by whether a Participating or Nonparticipating Pharmacy dispenses the order. It is not necessarily the amount the pharmacy will bill. Any expense incurred which exceeds the following amounts is not a Prescription Drug Covered Expense:  (a) for Prescription Drug Orders dispensed from a Participating Pharmacy, or through the mail service program, the Prescription Drug Allowable Charge; (b) for Prescription Drug Orders dispensed by a Nonparticipating Pharmacy, the lesser of the Maximum Allowable Cost or the Average Wholesale Price.

**Prescription Drug Allowable Charge** is the charge that Participating Pharmacies and the mail service program have agreed to charge Covered Persons, based on a contract between HNL and such provider.

**Prescription Drug Order** is a written or verbal order or refill notice for a specific drug, strength and dosage form (such as a tablet, liquid, syrup or capsule) directly related to the treatment of an illness or injury and which is issued by the attending Physician within the scope of his or her professional license.

**Prior Authorization** is HNL's approval process for certain Level I, Level II and Level III Drugs. Physicians must obtain HNL's Prior Authorization before certain Level I, Level II and Level III Drugs will be covered.

**Private Duty Nursing** means continuous nursing services provided by a licensed nurse (RN, LVN or LPN) for a patient who requires more care than is normally available during a home health care visit or is normally and routinely provided by the nursing staff of a Hospital or Skilled Nursing Facility. Private Duty Nursing includes nursing services (including intermittent services separated in time, such as 2 hours in the morning and 2 hours in the evening) that exceeds a total of four hours in any 24-hour period. Private Duty Nursing may be provided in an inpatient or outpatient setting, or in a non-institutional setting, such as at home or at school. Private Duty Nursing may also be referred to as "shift care" and includes any portion of shift care services.

**Residential Treatment Center** is a twenty-four hour, structured and supervised group living environment for children, adolescents or adults where psychiatric, medical and psychosocial evaluation can take place, and distinct and individualized psychotherapeutic interventions can be offered to improve their level of functioning in the community. HNL requires that all contracted Residential Treatment Centers must be appropriately licensed by their state in order to provide residential treatment services.

**Schedule Amount** is the amount from HNL's Limited Fee Schedule which HNL will base payments for the covered services of Out-of-Network Providers. A representative sample of that schedule is set in the "HNL Limited Fee Schedule for Out-of-Network Providers" portion of "Plan Benefits" section. You may contact the Member Services Department at the telephone number on Your HNL ID Card for assistance in calculating the Schedule Amount for any covered service or to obtain additional information on HNL's Limited Fee Schedule. Any amount charged by an Out-of-Network provider which exceeds the Schedule Amount is not a Covered Expense.

**Serious Emotional Disturbances Of A Child** is when a child under the age of 18 has one or more Mental Disorders identified in the most recent edition of the *Diagnostic and Statistical Manual of Mental Disorders*, other than a primary substance use disorder or a developmental disorder, that result in behavior inappropriate to the child's age according to expected developmental norms. In addition, the child must meet one or more of the following:

# EXHIBIT A

AMBULATORY CARE SURGICAL CENTER
3225 KEARNY VILLA WAY
SAN DIEGO, CA. 92123
858-974-7200

EXHIBIT A

833 8

| 5 FED. TAX NO. | 6 STATEMENT COVERS PERIOD FROM | THROUGH |
|---|---|---|
| 27-1402769 | 10/07/11 | 10/07/11 |

8 PATIENT NAME: BERNSTEIN, GRAHAM

9 PATIENT ADDRESS: 290 SURFVIEW COURT DEL MAR CA 92014

| 10 BIRTHDATE | 11 SEX | 12 DATE ADMISSION |
|---|---|---|
| 04/06/57 | M | 100711 |

BILL

HEALTHNET
PO BOX 14702
LEXINGTON KY 40512

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATE / HIPPS CODE | 47 TOTAL CHARGES |
|---|---|---|---|
| 250 | DRUGS/PHARMACY ITEMIZED | 46250 | $1,597.20 |
| 270 | MEDICAL/SURGICAL ANES SUPPLY | 46250 | $7,635.08 |
| 360 | OPERATING ROOM | 46250 | $5,275.00 |
| 760 | PRE OP HOLDING | 46250 | $402.50 |
| 710 | RECOVERY ROOM | 46250 | $1,932.50 |

CREATION DATE 10/07/11   TOTALS ▶ $16,842.28

PAGE 1 OF 1

58 NPI 477882199

| 50 PAYER NAME | 51 HEALTH PLAN ID | 52 REL INFO | 53 ASG BEN |
|---|---|---|---|
| HEALTHNET | S051249 | Y | Y |

| 58 INSURED'S NAME | 60 INSURED'S UNIQUE ID | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|
| BERNSTEIN, GRAHAM | R05031854 | CHILDRENS' SPECIALI | N328AA |

66 DX: 455.8   $69.3

69 ADMIT DX: 455.8   70 PATIENT REASON DX: 569.3

| 74 PRINCIPAL PROCEDURE CODE / DATE | a. OTHER PROCEDURE CODE / DATE | b. OTHER PROCEDURE CODE / DATE |
|---|---|---|
| 45378 10/07/11 | 46250 10/07/11 | 46221 10/07/11 |

76 ATTENDING NPI 1124080015   KHALIL, MICHAEL MD

77 OPERATING NPI 1124080015   KHALIL, MICHAEL MD

80 REMARKS: OUTPATIENT AMBULATORY SURGERY

# EXHIBIT B



Health Net

Exhibit B

EOB

Page

PO Box 10406
Van Nuys, CA  91410-0406

| Process Date | Nov 15, 2011 |
|---|---|
| Remittance No | HNLF -0015633446 |
| Payee No | 27-1402769 A |
| SVC Provider | AMBULATORY CARE SURGICAL |
| SVC Provider No. | 27-1402769 A |

AMBULATORY CARE SURGICAL
CENTER
5225 KEARNY VILLA WAY
SAN DIEGO CA  92123-1410

# REMITTANCE ADVICE

| Patient Name | BERNSTEIN, GRAHAM | Your Acct # | |
|---|---|---|---|
| SubID | R05031854 | Claim # | 2011304-NF7-163 |
| SSN | XXX-XX-5876 | Receipt Date | 10/11/2011 |

**HEATLH NET PPO**
Questions? Contact us at:    provider_services@healthnet.com or 1-800-929-9224
PO Box 10406 Van Nuys, CA  91410-0406

| Svc Dates - From/Thru | CPT | Modifier 1 2 3 4 | Billed Amount ($) | Amount Not Allowed ($) | Allowed Amount ($) | Patient Copay Coinsurance Deductible | Total Patient Resp. Amt ($) | Benefit Payable ($) | Ex Cod |
|---|---|---|---|---|---|---|---|---|---|
| 10/07/11 | | | 16,842.28 | 8,421.14 | 8,421.14 | | 8,421.14 | 4,210.57 | 96 |
| | | | | | | 4,210.57 | 4,210.57 | | CO-IN |
| Total | | | 16,842.28 | 8,421.14 | 8,421.14 | 4,210.57 | 12,631.71 | 4,210.57 | |

**Member Plan Code** 1AY3

| | |
|---|---|
| Total Claims Payable | 4,210.57 |
| Total Check Amount | 4,210.57 |

**Explanation Code Description**

96 -          Amount exceeds the maximum allowable for this benefit.

# EXHIBIT C



**Ambulatory Care Surgery Center**

November 23, 2011

Health Net Appeals
Po Box10406
Van Nuys, CA  91410-0406

*Exhibit C*

Attention - Provider Appeals Unit

*Appeal*

Patient:  Graham Bernstein
DOS:      October 7,2011
ID#:       R05031854
Insured:  Self
Emp:      Children's specialists of San Diego
Group#:  N328AA

To Appeals Department:

We are requesting an independent review of the claim for proper reimbursement for the October 7,2011 date of service for Graham Bernstein

When we called in advance of the surgery for benefits, we were informed by Health Net and we documented in writing on two separate phone calls that the benefit reimbursement for non-contracting facility providers would be 50% of usual and customary, with a $6,000.00 deductible and a $12,000.00 stop loss. During the phone calls we specifically asked and it was stated that the reimbursement was not based upon managed care rates with a fixed or limited fee schedule for non-contracting providers such as the $4,210.57 payment and allowable amount of $8,421.14. Knowingly misstating facts and policy benefits may be a violation of state courts rulings as well as a breach of the Unfair Claims Settlement Practices Acts.

The procedure, a  colonoscopy with hemorrhoid banding ,was performed in a major operating room at our state licensed and Medicare certified surgery center in San Diego, California. The amount paid is not acceptable reimbursement considering our geographic location, procedure performed, time spent in our facility, i.e. OR, pre-op and recovery room and the itemized supplies and equipment used.  The surgery center is very much aware of usual and customary rates for the San Diego area for the procedure mentioned above. The Surgery center tracks usual and customary rates for a wide variety of insurance companies and has the supporting backup data to show reasonable and customary rates in our geographical area.  Your allowance of $8,421.14 for a surgery center facility fee for the procedure mentioned above is not usual and customary. **It has been shown that insurance companies use non-independent review organizations to determine usual and customary rates for out of network claims. It has also been shown that these non-independent review companies have been using inappropriately low reasonable and customary rates for out of network claims. Please have this claim reviewed by a truly external and independent review organization so that it will be paid at appropriate out of network usual and customary rates.**

We would appreciate your immediate attention to this appeal, so that we may resolve this matter. We have enclosed a copy of the explanation of benefits.  Please respond to us in a timely manner.  Enclosed is a copy of the patient's authorization for us to appeal this claim.

Sincerely,

Billing and Collection



**Health Net**
Life Insurance Company

Health Net Life Insurance Co,
P.O. Box 10406
Van Nuys, California 91410-0406
www.healthnet.com

01/11/2012

Ambulatory Care Surgical
5225 Kearny Villa Way
San Diego , CA 92123

*Exhibit C*

*Denial*

Subscriber Name: Graham  Bernstein
Patient Name: Graham  Bernstein
Health Net ID #: R05031854MM1
Patient Account #: none
HN Case #: 11334C00838
Claim #: 2011304-NF7-163
Date(s) of Service: 10/07/2011
Billed Amount: $16,842.28

Dear Provider:

I am responding to your request for a claim dispute, dated 11/23/2011, regarding the above-referenced  claim.

In consideration of your dispute, the following information was reviewed:

- Dispute letter dated or received on 11/30/2011
- Remittance Advice or Explanation of Benefits (EOB) issued on 11/15/2011

Based on our review of this information, Health Net's Provider Appeals Unit has determined to uphold our previous determination for the following reasons: Claim was processed based on member's out of network benefit plan at 50% of billed charges less 50% copayment.

If you believe all or part of the claim has been wrongfully denied or rejected and you have been unable to resolve your dispute with Health Net, you may have the matter reviewed by the California Department of Insurance.  You may contact the California Department of Insurance at 300 S. Spring Street, Los Angeles, CA  90013.  The Department also has a toll-free telephone number (1-800-927-HELP (4357)) and a TDD line (1-800-482-4TDD Ext. 4833) for the hearing and speech impaired.  The Department's Internet website is www.insurance.ca.gov.  Out of state members may call 1-213-897-8921.

**Billing Dispute External Review Board (BDERB)**
You have now exhausted Health Net's internal review process for the subject claim(s). Health Net contracts with Independent Medical Expert Consulting Services, Inc (IMEDECS) to perform Billing Dispute External Reviews of qualifying disputes. To learn more about the process, or determine if your claim qualifies for BDERB, please visit Health Net's website at www.healthnet.com.

If you should have any additional questions or concerns, please contact our Provider Services Department at (800) 641-7761.  Provider Service Department Representatives are available Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m.

Sincerely,
Adelle  J.
Provider Appeals Unit

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of _San Diego_, State of California, and not a party to the above-entitled cause.  On _____, I served a true copy of:

**FIRST AMENDED COMPLAINT FOR MONEY DAMAGES PURSUANT TO 29 U.S.C. §§ 1002 et. seq., 1109 et. seq., and 1132 et seq. (Employee Retirement Income Security Act of 1974, as amended)**

by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:  (List names and addresses for person(s) served. Attach additional pages if necessary.)

Elise D. Klein, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Ph: 213.250.1800 | Fax: 213.250.7900
Email: klein@lbbslaw.com

Place of Mailing: _San Diego, California_
Executed on _8/23_, 2012 at _San Diego_, California.
Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

☑ I hereby certify under the penalty of perjury that the foregoing is true and correct.

_Caroline Baldwin_
Signature of Person Making Service

Case No.: 12cv0717 AJB JMA

PROOF OF SERVICE