UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GRAHAM BERNSTEIN, | ) | Civil No. 12-cv-00717 AJB (JMA) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| v. | ) | **DENYING IN PART DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| HEALTH NET LIFE INSURANCE | ) | |
| COMPANY; and DOES 1 through 10, | ) | |
| Inclusive, | ) | |
| | ) | (Doc. No. 15) |
| Defendants. | ) | |

Presently before the Court is Defendant Health Net Life Insurance Company's ("Defendant") motion to dismiss Plaintiff Graham Bernstein's ("Plaintiff") First Amended Complaint ("FAC"), filed on August 23, 2012.  (Doc. No. 14.)  On November 2, 2012, Plaintiff filed an opposition, (Doc. No. 18), and on November 16, 2012, Defendant filed a reply, (Doc. No. 22).  In accordance with Civil Local Rule 7.1.d.1, the Court finds this motion suitable for determination on the papers and without oral argument.  Accordingly, the motion hearing scheduled for January 4, 2013 is hereby vacated.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## *Background*

On March 26, 2012, Plaintiff filed the original Complaint ("Complaint") alleging (1) false pretenses and false representations; and (2) breach of contract/breach of fiduciary duties.[1]  (Doc. No. 1.)

---

[1] Plaintiff originally brought this action *pro se*, but has since retained counsel.  (Doc. No. 19.) The motion to substitute counsel was filed concurrently with Plaintiff's opposition to the instant motion.

1  Defendant filed a motion to dismiss the Complaint on April 18, 2012, (Doc. No. 3), and on August 1,

2  2012, the Court granted the unopposed motion, (Doc. No. 12).  On August 23, 2012, Plaintiff filed the

3  operative FAC, (Doc. No. 14), alleging (1) wrongful denial of benefits under the Employee Retirement

4  Income Security Act of 1974 ("ERISA"); (2) breach of fiduciary duty under ERISA; (3) negligent

5  misrepresentation; and (4) promissory estoppel.  (*Id.*)

6       The FAC alleges that on or about October 7, 2011, Plaintiff underwent surgery (the "Procedure")

7  at Ambulatory Care Surgery Center ("ACSC"), an out-of-network provider.  (*Id*. at ¶ 12.)  At the time

8  the Procedure was performed, Plaintiff was covered by a health insurance plan (the "Plan") that was

9  administered by Defendant.  (*Id*. at ¶ 11.)  Plaintiff understood, based on the terms of the Plan, that the

10 Procedure would be covered, but was unsure as to the specific dollar amount covered by the Plan. (*Id*. at

11 ¶ 13.)  The Plan instructs insureds, like Plaintiff, to call customer service for guidance regarding

12 coverage for out-of-network providers.  (*Id*. at ¶ 14.)  Accordingly, prior to the Procedure, ACSC called

13 Defendant to confirm Plaintiff's insurance coverage.  (*Id*. at ¶ 16.)  During this communication, ACSC

14 was advised by Defendant that the medical coverage would be fifty percent (50%) of the reasonable and

15 customary charges by the clinic utilized for the procedure as an out of network provider (here ACSC),

16 subject to a $6,000 deductible charge and a $12,000 stop loss.  (*Id.* at ¶ 17.)  Based on this information,

17 Plaintiff went ahead with the Procedure, which was billed by ACSC in the amount of $16,842.28.  (*Id*.

18 At ¶ 26.)  After the Procedure, Defendant sent a check to ACSC for $4,210.57, which was calculated by

19 Defendant based on fifty percent (50%) of the billed charges, or $8, 421.14, minus Plaintiff's

20 coinsurance requirement of $4,210.57.  (Doc. No. 15 at p. 4.)  Plaintiff argues that Defendant should

21 have paid an additional $8,421.14, and contends Defendant misrepresented the nature of the available

22 medical insurance coverage and "wrongfully failed and refused to honor their legal commitment to

23 plaintiff."  (Doc. No. 14 at ¶ 32 .)   Plaintiff requests damages in the amount of $8,421.14, including

24 interest and actual attorneys fees.  (*Id*. at p. 10.)

25                              ***Legal Standard***

26      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings, and allows

27 a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which

28 relief may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court may dismiss

1  a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under

2  a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th

3  Cir. 1996) (citation omitted).  However, a complaint survives a motion to dismiss if it contains "enough

4  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5  570 (2007).

6      Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true.

7  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  It is also improper for the court to assume "the [plaintiff]

8  can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

9  *Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded

10  factual allegations, a court should assume their veracity and then determine whether they plausibly give

11  rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.  However, the court reviews the contents of the

12  complaint accepting all factual allegations as true, and drawing all reasonable inferences in favor of the

13  nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).  In ruling

14  upon a motion to dismiss, the court may appropriately consider only the complaint, exhibits submitted

15  with the complaint, and matters which may be judicially noticed pursuant to Federal Rule of Evidence

16  201. *See Mir v. Little Co. Of May Hosp.*, 844 F.2d 646, 649 (9th Cir. 1998); *Isuzu Motors Ltd. v.*

17  *Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

18                                        ***Discussion***

19  **I.      Wrongful Denial of Benefits**

20      Plaintiff's first cause of action alleges Defendant wrongfully denied payment of medical benefits

21  required by Plaintiff's health insurance.[2]  The FAC states that "Defendant advised Plaintiff, through

22  ACSC, that the procedure would be covered at fifty percent (50%) of the billed charges by the clinic

23  utilized for the procedure as an out of network provider, subject to a $6,000 deductive charge and a

24  $12,000 stop loss charge."  (Doc. No. 14 at ¶ 17.)  Plaintiff alleges that Defendant violated ERISA by

25  subsequently failing to pay fifty percent (50%) of the billed charges.  (*Id*. at ¶ 18.)  Defendant counters,

26  stating that they fulfilled their obligations because they paid fifty percent (50%) due from the billed

27  charges for an out-of-network provider—here ACSC—minus the remainder due on Plaintiff's deduct-

28

[2] This cause of action is brought under 29 U.S.C. 1132(a)(1)(B).

1    ible.  Defendants contend Plaintiff concedes this by attaching both a copy of the Plan, (Doc. No. 14; Ex.

2    A), and the Remittance Advice, (*Id.*; Ex. B).  In rebuttal, Plaintiff argues Defendant completely ignores

3    the critical language regarding "reasonable and customary charges," which makes ACSC's own rate a

4    critical factor in determining Defendant's payment obligation.  (Doc. No. 18 at pp. 4-5.)  The Court is

5    not persuaded.

6         Here, ACSC sent a letter to Defendant requesting an independant review of the claim and proper

7    reimbursement.  (Doc. No. 14; Ex. C.)  Defendant denied the appeal, stating that it was choosing to

8    uphold its previous determination that the claim was processed based on Plaintiff's out-of-network

9    benefit plan at fifty percent (50%) of the billed charges, less fifty percent (50%) of the remaining co-

10   payment still due from Plaintiff.  The duty to pay a reasonable and customary amount is owed by the

11   health care insurer—Defendant—to the out-of-network provider—ACSC—not to the plan mem-

12   ber—Plaintiff.  Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B); *Prospect Med. Grp. v. Northridge*

13   *Emergency Med. Grp.* (2009) 45 Cal.4th 497, 504 ("[A] patient will have little basis by which to

14   determine whether a bill is reasonable and, because the [insurer] is obligated to pay the bill, no

15   legitimate reason exists for the patient to have to do so").[3]  Consequently, if ACSC decided the amount

16   paid to them was not reasonable and customary, their relief lies in bringing suit against the insurer.

17   *Prospect*, 45 Cal.4th at 507.  Here, however, ACSC set the billed amount at what they believed was

18   reasonable and customary.  Defendant did not reduce this amount when deciding what amount was due

19   to ACSC, but rather calculated fifty percent (50%) of the total, minus Plaintiff's outstanding deductible.

20   Thus, any claim that the reimbursement was not based on "reasonable and customary" charges must be

21   made by ACSC.  *See also Clark v. Gp. Hospitalization & Med. Services, Inc.*, 2010 WL 5093629 *7

22   (S.D. Cal. Dec. 7, 2010) ("The duty to pay a "reasonable and customary amount" is owed by the health

23   care insurer, here CareFirst, to the non-contracting emergency room physicians, here Emergency

24   Physicians Associates, not to the plan member, Plaintiff.").

25   _____

26   [3] The *Prospect* court noted, "When a dispute exists between doctors and an HMO, the bill the doctors submit may or may not be the reasonable payment to which they are entitled. The *Bell* court

27   made clear that an HMO does not have "unfettered discretion to determine unilaterally the amount it will reimburse a noncontracting provider . . ." *Prospect Med. Grp.*, 45 Cal.4th at 508.  Thus, whether or

28   not an amoutn billed for a procedure is "reasonable and customary" is a dispute between the attending doctor and the insurance company.  If the insurance company accepts the amount charged by the doctor there is no dispute.

1    Indeed, the FAC acknowledges that Plaintiff was informed of the terms of the payment plan in

2  advance.  (Doc. No. 14 at ¶ 17.)  Moreover, Plaintiff acknowledges that Defendant paid $4,210.57 to

3  ACSC for the Procedure.  (*Id*. at ¶ 27.)  The total bill from ACSC was $16,842.28.  (*Id*.; Ex. B.)

4  Defendant agreed to cover half of that cost, minus any deductible.  (*Id*. at ¶ 17.)  Half of the total cost

5  would be $8,421.14.  (Doc. No. 15 at p. 4.)  Defendant reduced this amount by the alleged remaining

6  deductible, $4,210.57, and paid the remaining balance of $4,210.57.  (Doc. No. 14; Ex. B.)  Plaintiff,

7  however, claims that the deductible is "satisfied."  (Id at ¶ 17.)  Taking all evidence in the light most

8  favorable to the Plaintiff, if the deductible was indeed paid at the time of the claim, Defendant would be

9  responsible for the remaining balance.[4]  The Court notes, however, that Plaintiff has erred in its

10  determination of damages.  If any relief is due, that relief must take into account the amount already

11  paid by Defendant, here $4,210.57.  Accordingly, at this stage in the proceeding, the Court finds

12  Plaintiff has alleged a feasible claim for relief and Defendant's motion to dismiss Plaintiff's first cause

13  of action is **DENIED**.

14  **II.    Breach of Fiduciary Duty**

15    In an ordinary insurer/insured relationship there is no fiduciary obligation or duty to the insured.

16  *Hassard, Bonnington, Roger & Huber v. Home Ins. Co.*, 740 F. Supp. 789, 792 (S.D. Cal. 1990).

17  However, "under ERISA, a person is a fiduciary with respect to a plan to the extent . . . he has any

18  discretionary authority or discretionary responsibility in the administration of such plan[.]"  29 U.S.C.A.

19  § 1002(21)(A) (1988).  A claim for breach of fiduciary duty based on a denial of individual benefits

20  requires an allegation that the "denial is part of a 'larger systematic breach of fiduciary obligations.'"

21  *Reynolds v. Forts Benefits Ins. Co.*, 2007 WL 484782 *8 (N.D. Cal., Feb. 9, 2007).

22    Here, Plaintiff has failed to plead sufficient facts to state why a fiduciary duty was created by

23  Defendant's actions and/or inactions, and the Court is reluctant to assume facts not articulated by

24

25    [4] For the first time in the reply, Defendant categorizes the amount to be paid by Plaintiff as a "co-insurance" requirement, not as a deductible.  (Doc. No. 22 at p. 2.)  Defendant's reply suggests that
26  Defendant made clear it would be responsible for fifty percent (50%) of the total bill, minus fifty percent of that amount–or twenty-five percent (25%).  However, Plaintiff's FAC claims Defendant assured him
27  that they would pay fifty percent (50%), minus any deductible or stop loss.  If, indeed, the deductible was satisfied, it is possible that Plaintiff reasonably believed that fifty percent of his bill would be paid
28  by Defendants.  At this stage in the pleadings, the possibility of the denial of benefits is enough to survive a motion to dismiss.

1   Plaintiff.  Specifically, Plaintiff has failed to allege anything larger in scope than the mishandling of his

2   personal benefits, or allege that his inquiry is part of a larger scheme by Defendant.  Simply stating that

3   Defendant is a fiduciary does not satisfy Plaintiff's obligation to plead a fiduciary duty and subsequent

4   breach to the plan as a whole.  Moreover, in judging the actions taken by trustees in the course of a

5   breach of fiduciary analysis, the Court's inquiry is limited to determining whether the actions were

6   arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries.  *Palino v.*

7   *Casey*, 664 F.2d 854, 858 (1st Cir. 1981).   Therefore, the Court finds Plaintiff has failed to plead that

8   Defendant acted arbitrarily in its denial of benefits for the Procedure as a systematic breach of a

9   fiduciary obligation.

10          Furthermore, the Supreme Court has held that the language "appropriate equitable relief," does

11   not authorize suits for money damages for breach of fiduciary duty.  *Mertens v. Hewitt Assocs.*, 508 U.S.

12   248, 257-58 (1993).  The Ninth Circuit has echoed this limitation:  "[E]quitable relief" in the form of the

13   recovery of compensatory damages is not an available remedy under Section 502(a)(3).  *Bast v.*

14   *Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998) (citing *McLeod v. Oregon Lithoprint*

15   *Inc.*, 102 F.3d 376 (9th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997)); *see also Mass. Mut. Life Ins. Co.*

16   *v. Russell*, 473 U.S. 134, 146 (1985) (holding that under Section 1109, a fiduciary who breaches his

17   fiduciary duty is liable to the plan-not, to the beneficiaries individually).  Accordingly, Defendant's

18   motion to dismiss Plaintiff's second cause of action is **GRANTED without leave to amend**.

19   **III.    Negligent Misrepresentation**

20          Plaintiff's third cause of action asserts Defendant falsely "represented that Plaintiff's health

21   insurance under the Plan was in effect and that the Procedure and related services were covered under

22   the Plan."  (Doc. No. 14 at ¶ 44.)  Defendant, in rebuttal, argues Plaintiff's state law claims are

23   preempted by ERISA and must be dismissed.  (Doc. No. 15 at p. 6.)   The Court is inclined to agree.

24          ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as

25   they may now or hereafter relate to any employee benefit plan. . . "  29 U.S.C. §1144(a).  This

26   preemption provision may be invoked only if (1) the relevant plan is governed by ERISA; and (2) the

27   state law claims "relate to" the ERISA plan.  29 U.S.C. § 1144(a); *Shaw v. Delta Airlines, Inc.*, 463 U.S.

28   85, 96-98 (1983).  State law claims do not "relate to" the ERISA plan if the claim can exist without the

1   defendant's failure to pay the benefit.  *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th

2   Cir. 2001).  Thus, to avoid ERISA preemption, Plaintiff's claim must exist even without the Defendant's

3   failure to pay the benefit.  *See id.* ([Plaintiff's] damages for invasion of privacy remain whether or not

4   [defendant] ultimately pays his claim.  His tort claim does not depend on or derive from his claim for

5   benefits in any meaningful way.).  *Serpa v. SBC Telecomm., Inc.*, 318 F. Supp. 2d 865, 871 (N.D. Cal.

6   2004).

7          Here, had Defendant paid the amount Plaintiff expected, his state law claims for negligent

8   misrepresentation would have no basis in fact or law.  *See Egelhoff v. Egelhoff*, 532 U.S. 141, 147

9   (2001) (cautioning against uncritical literalism when interpreting ERISA's related to requirement).

10  Therefore, Plaintiff's claim for negligent misrepresentation arising under state law is preempted by

11  ERISA.  Accordingly, even construing all facts in favor of the non-moving party, Defendant's motion to

12  dismiss Plaintiff's third cause of action is **GRANTED without leave to amend**.

13  **IV.    Promissory Estoppel**

14         Plaintiff's fourth cause of action asserts a claim for promissory estoppel.  Plaintiff alleges

15  Defendant made representations as to his insurance coverage and that he relied on those representations

16  to his detriment.  (Doc. No. 14 ¶¶ 53-55.)  Defendants move to dismiss this cause of action alleging it is

17  likewise preempted by ERISA.  (Doc. No. 15 at p. 7.)

18         Although ERISA does preempt state equitable estoppel claims, a party may assert a federal

19  equitable estoppel claim in an ERISA action.  *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331

20  (9th Cir. 1996).  An ERISA beneficiary may recover benefits under an equitable estoppel theory upon

21  establishing: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the

22  representation; and (3) extraordinary circumstances.  *Id.*  Plaintiff's allegations only loosely fulfill the

23  first two pleading requirements.  Moreover, even if a plaintiff establishes the initial three pleading

24  requirements, relief is only available in the Ninth Circuit where (1) the provisions of the plan at issue are

25  ambiguous such that reasonable persons could disagree as to their meaning or effect; and (2) representa-

26  tions were made to the plaintiff involving an oral interpretation of the plan.  *Id.* (combining the three

27  base requirements for equitable estoppel claim under ERISA with Ninth Circuit requirements from

28  *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir.1992)).  Although Plaintiff

has clearly plead that Defendant made oral representations interpreting the scope of coverage under the Plan, the Court is at a loss to see how the provisions of the plan were ambiguous, such that reasonable persons could disagree.   Therefore, Plaintiff has failed to clearly articulate a claim for promissory estoppel.  Accordingly, Defendant's motion to dismiss Plaintiff's fourth cause of action is **GRANTED with leave to amend**.

### *Conclusion*

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss Plaintiff's FAC.  (Doc. No. 15.)   Plaintiff has until **<u>January 3, 2013,</u>** to file an amended Complaint.  Specifically, the Court makes the following findings with respect to Defendant's instant motion:

1.  **DENIES** Defendant's motion to dismiss as to the First Cause of Action for wrongful denial of benefits;

2.  **GRANTS** Defendant's motion to dismiss as to the Second and Third Causes of Action for breach of fiduciary duty and negligent misrepresentation **without leave to amend**;

3.  **GRANTS** Defendant's motion to dismiss as to the Fourth Cause of Action for promissory estoppel **with leave to amend**.

IT IS SO ORDERED.

DATED:  November 29, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge